## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **VALMET, INC., VALMET FLOW CONTROL INC., and GAS CHROMATOGRAPHY SYSTEMS MAXUM LLC,**<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**UNITED STATES OF AMERICA; and UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT,** *in his capacity as Commissioner of United States Customs and Border Protection*<br><br>        **Defendants** | **Court No. 26-01030** |

### COMPLAINT

Valmet, Inc., Valmet Flow Control Inc., and Gas Chromatography Systems MAXUM LLC (collectively the "Valmet Entities" or "Plaintiffs"), by and through their undersigned counsel, allege the following:

1.     The Valmet Entities are the importers of record for machinery, equipment, components and other goods for the pulp, paper, and energy industries subject to the tariffs, *i.e.*, duties, challenged in this complaint.  As with challenges raised by other similarly-situated plaintiffs, the Valmet Entities bring this action to (a) challenge the legality of the tariffs imposed since February 2025 pursuant to the International Emergency Economic Powers Act ("IEEPA"), and (b) seek refunds of any and all duties Plaintiff has paid pursuant to the challenged tariff actions.

2.      Since February 2025, the President of the United States has signed a series of
Executive Orders invoking IEEPA as the basis for imposing broad new tariffs ("IEEPA duties")
on goods entering the United States from nearly every country, including Finland, China, India,
Germany, and other countries from which the Valmet Entities import their merchandise.  As
importers of record, Plaintiffs are responsible for tendering payment of IEEPA duties on goods
they import into the United States to Defendant U.S. Customs and Border Protection ("CBP" or
"Defendant"), and, in fact, have paid a significant volume of such IEEPA duties.

3.      IEEPA does not authorize the imposition of these tariffs.  This Court and the
United States Court of Appeals for the Federal Circuit ("Federal Circuit") have already held that
IEEPA does not authorize the President to impose these tariffs. *See V.O.S. Selections, Inc. v.
Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S.
Sept. 9, 2025).  The U.S. District Court for the District of Columbia has also found that the same
tariffs were not authorized by the IEEPA statute.  *See Learning Res., Inc. v. Trump,* 784 F. Supp.
3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S.
Sept. 9, 2025).

4.      This action specifically contests Defendants' imposition of IEEPA tariffs on
Plaintiff's imported merchandise pursuant to the following Executive Orders, as amended
(collectively referred to in this complaint as the "Challenged IEEPA Tariff Orders"):

    a.  Executive Order 14195 of February 1, 2025, *Imposing Duties to Address the
Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed.
Reg. 9,121 (Feb. 7, 2025);

    b.  Executive Order 14228 of March 3, 2025, *Further Amendment to Duties
Addressing the Synthetic Opioid Supply Chain in the People's Republic of
China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025);

    c.  Executive Order 14257 of April 2, 2025, *Regulating Imports with a
Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and*

*Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025), as amended[1];

d.  Executive Order 14266 of Apr. 9, 2025, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025)[2];

e.  Executive Order 14329 of August 6, 2025, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025).

5.      Under direction of the Challenged IEEPA Tariff Orders, CBP issued certain Guidance through its Cargo Systems Messaging System ("CSMS") to inform importers of various tariff changes.[3]

6.      Through this court action, Plaintiff asks this Court to reaffirm the previous holdings of the CIT and the Federal Circuit in *V.O.S. Selections* that: (a) Executive Order Nos. 14195, 14228, 14257, and 14266, and their respective amendments, all promulgated pursuant to IEEPA, are "invalid as contrary to law," and (b) the collection of any IEEPA tariffs under these

---

[1] *See* Executive Order 14200 of February 5, 2025, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025); Executive Order 14259 of April 8, 2025, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (April 14, 2025); Executive Order 14298 of May 12, 2025, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 21,831 (May 21, 2025); Executive Order 14326 of July 31, 2025, *Further Modifying Reciprocal Tariffs*, 90 Fed. Reg. 37,963 (Aug. 6, 2025); Executive Order 14334 of August 11, 2025, *Further Modifying Reciprocal Tariffs to Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39,305 (Aug. 14, 2025); Executive Order 14358 of November 4, 2025, *Modifying Reciprocal Tariff Rates Consistent with the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

[2] Executive Order 14316 of July 7, 2025, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (July 10, 2025).

[3] *See*, *e.g.*, CSMS # 63988468 - GUIDANCE: Additional Duties on Imports from China (Feb. 3, 2025); CSMS # 64649265 - GUIDANCE – Reciprocal Tariffs, April 5, 2025 Effective Date (Apr. 4, 2025); CSMS # 64687696 - UPDATED GUIDANCE – Reciprocal Tariffs on Goods of China, April 9, 2025, Effective Date (Apr. 8, 2025); CSMS # 66027027 - Guidance-Additional Duties on Imports from India (Aug. 25, 2025).

Executive Orders was likewise unlawful.  Plaintiff further asks this Court to hold that Executive

Order No. 14329, and any amendments, which likewise were issued under IEEPA, are unlawful

for many of the same reasons.  As such, the collection of any IEEPA tariffs collected under those

additional Executive Orders was also unlawful.

7.      *V.O.S. Selections* and *Learning Resources* are under consideration by the

Supreme Court.  Briefing is complete and the Supreme Court held oral argument on November

5, 2025.  Due to the expedited nature of its review, the Supreme Court may issue its decision

soon.

8.      Plaintiffs bring this separate action to ensure their right to refunds of any and all

unlawfully collected duties under IEEPA, including both the actions challenged in *VOS

Selections* and additional unlawful tariffs imposed under IEEPA on products of India in August

2025.  Even if the Supreme Court holds that the IEEPA duties and the underlying Executive

Orders are illegal, there is a risk that importers may not be assured refunds of the unlawfully

collected tariffs without their own court judgment providing judicial relief.  *See AGS Company

Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op.

25-154 (Ct. Int'l Trade Dec. 15, 2025).

9.      Plaintiffs' import entries on which these unlawful IEEPA tariffs were paid have

already begun to liquidate, with anticipated liquidations accelerating in February 2026.

10.     Accordingly, with respect to all import entries for which it paid IEEPA duties

(including both liquidated and unliquidated entries), Plaintiffs seek (i) a declaration that such

IEEPA duties are unlawful; (ii) an injunction barring Defendants from continuing to assess or

collect duties imposed under the challenged Executive Orders; and (iii) an order requiring

Defendants to refund all IEEPA duties Plaintiff already paid on its covered imports, as well as

any such duties Plaintiff pays during the pendency of this action.  To the extent that Plaintiffs' entries subject to IEEPA duties liquidate during the pendency of this action, Plaintiffs also seek remedial relief in the form of reliquidation such that Plaintiffs can receive refunds (with interest) of all IEEPA duties paid.

## PARTIES

11.    The Valmet Entities are U.S. affiliates of Valmet Oyj ("Valmet"), a Finnish-based global technology leader in process-based industries, including pulp and papermaking.  Based in Espoo, Finland, Valmet also provides automation and flow control solutions and other cutting edge solutions to industrial customers around the world.  Valmet's global network also provides technical support, maintenance, and parts and services for its imports in approximately 40 countries, including the United States.  Plaintiffs are the importers of record for this merchandise.

12.    Defendant, the United States of America, is the federal government of the United States of America.  Defendant United States of America imposed and received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13.    Defendant United States Customs and Border Protection ("CBP") is a component agency of the United States Department of Homeland Security ("DHS"), headquartered in Washington, D.C.  CBP is responsible for administering and collecting duties and taxes on goods imported into the United States.

14.    Defendant Rodney S. Scott is the Commissioner of CBP and is named as a Defendant in his official capacity.

## JURISDICTION AND STANDING

15.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i).  *See V.O.S. Selections*, 149 F.4th at 1334; *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

16.     In addition, this Court possesses the same equitable authority as a federal district court under 28 U.S.C. § 1585.  Where a civil action arises under 28 U.S.C. § 1581, this Court may issue a money judgment against the United States and grant any other appropriate remedy, such as declaratory relief, injunctions, remand orders, and writs of mandamus or prohibition.  *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

17.     Plaintiffs have standing to pursue this action because they are the importers of record for merchandise subject to the challenged IEEPA duties.

18.     Plaintiffs have paid IEEPA duties pursuant to the very Executive Orders that have been found to be unlawful and has therefore suffered direct injury.  Those injuries are addressable through declaratory and injunctive relief.

## GENERAL PLEADINGS

### I.    The President has Issued Multiple Tariff Orders Invoking IEEPA Authority

#### A.    The Challenged IEEPA Tariff Orders

19.    On February 1, 2025, the President issued three Executive Orders imposing new tariffs on imports from Mexico, Canada, and China.  Each order invoked IEEPA as the statutory basis for authorizing the tariffs.  Each order justified the tariffs as necessary to address a claimed national emergency related to risks arising from alleged trafficking of illegal drugs into the United States and/or risks arising from illegal immigration.  Collectively, Plaintiff refers to these orders as the "Trafficking Tariff Orders."

20.    Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"),[4] imposed an additional 25 percent tariff on imports from Mexico.  The order justified the use of emergency powers by citing risks allegedly arising from an influx of illegal immigration and illicit drugs into the United States and Mexico's alleged failure to take action to counter those risks.  *Id.*

21.    Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[5] similarly declared an emergency tied to opioid trafficking and imposed a 25 percent additional tariff on imports from Canada, with certain exceptions.

---

[4] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025).

[5] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025) ("energy or energy resources" from Canada were subject to an additional 10 percent tariff).

22.     A third order, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"),[6] declared a national emergency related to opioid trafficking, asserting that "the sustained influx of synthetic opioids" constituted a national emergency and claimed that chemical suppliers based in China evaded enforcement efforts by hiding "illicit substances in the flow of legitimate commerce."  This order imposed an additional 10 percent *ad valorem* duty on imports of Chinese goods.

23.     On March 3, 2025, the President issued an amendment to the prior China Tariff Order via Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[7]  This amendment increased the tariff rates imposed by the February 1, 2025 China Tariff Order to 20 percent on the basis that China had "not taken adequate steps to alleviate the illicit drug crisis".[8]

24.     The following month, on April 2, 2025, citing the persistent U.S. trade deficit as a separate national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficit* ("Reciprocal Tariff Order").[9]  This order imposed a baseline 10 percent tariff on nearly all U.S. imports effective April 5, 2025, and

---

[6] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025).

[7] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[8] *Id*.

[9] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

increased the "reciprocal" tariffs on 56 countries and the member states of the European Union effective April 9, 2025.[10]  The higher country-specific tariff rates ranged from 11 to 50 percent.

25.    On April 8, 2025, the President signed Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, increasing the reciprocal tariff applicable to China from 34 to 84 percent in response to tariffs imposed by China on U.S. goods as retaliation for the U.S. tariff actions.[11]

26.    On April 9, the President signed Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*,[12] which suspended the higher country-specific tariffs on all countries, except China, for 90 days.  The same order raised the "reciprocal" tariff rate imposed on China-origin goods from 84 to 125 percent.  As a result, most Chinese-origin goods faced a combined 145 percent IEEPA-based tariff as a result of the 20 percent trafficking tariff and the 125 percent reciprocal tariff.[13]

27.    On August 6, 2025, after the *V.O.S. Selections* complaint was filed, the President issued Executive Order 14329 of August 6, 2025, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025).  This Executive Order imposed an additional 25% *ad valorem* tariff on imports from India for "directly or indirectly importing Russian Federation oil." *Id*.  As a result, most Indian-origin goods faced a combined 50 percent IEEPA-based tariff effective August 27, 2025.

---

[10] *Id*. at Annex I.

[11] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

[12] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

[13] Hereinafter, any Executive Order that establishes or modifies reciprocal tariffs that have IEEPA as its base will be referred to as the "Reciprocal Tariff Orders."

28.    In implementing these Executive Orders, the Defendants directed modifications to the HTS so that merchandise subject to the new duties would instead enter under newly assigned (Chapter 99) tariff codes.

29.    Plaintiff contests the Challenged IEEPA Tariff Orders, which affect the tariff rates on articles imported from the countries with which Plaintiff does business and for which Plaintiff pays tariffs (thus causing Plaintiff injury).

**B.    Subsequent Litigation Challenging the IEEPA Tariff Orders**

30.    On April 14, 2025, multiple companies filed an action in this Court challenging the legality of these Executive Orders.  *See V.O.S. Selections, et al. v. Donald Trump, et al.*, No. 25-066 (Ct. Int'l Trade 2025).  This Court held that the orders were unlawful,[14] and the Federal Circuit affirmed.[15]

31.    Since that time, the President has issued additional Executive Orders imposing or modifying tariffs under IEEPA, including Executive Order 14329 of August 6, 2025.  In this case, Plaintiffs challenge both the specific orders that the Federal Circuit has already held to be unlawful, and certain additional Executive Order reliant upon the same underlying statutory authority as those unlawful orders.

32.    On November 11, 2025, a U.S. importer of merchandise subject to IEEPA duties filed an action in this Court challenging the legality of these Executive Orders.  *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, No. 25-255 (Ct. Int'l Trade filed Nov. 11, 2025), ECF No. 3.  The instant action is comparable to the cases consolidated under Court No. 25-255.

---

[14] *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).
[15] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

33.    On December 15, 2025, this Court denied AGS Company Automotive Solutions' motion for preliminary injunction, finding that plaintiffs are not at risk of experiencing irreparable harm as a result of liquidation because this Court has the authority to order reliquidation in cases involving constitutional challenged to duties under 28 U.S.C. § 1581(i). *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).  In *AGS* and others involving IEEPA duties, "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in *V.O.S.*"  *Id*. at 8.  As a result, if the Supreme Court holds that the President lacked the authority to impose the challenged tariffs under IEEPA, Defendants are bound by their agreement not to oppose the relief requested in this Complaint.

**C.    Implementation of the Challenged IEEPA Tariffs by Defendant CBP**

34.    CBP is responsible for administering and collecting duties imposed under U.S. law, including the IEEPA-based tariffs at issue.  *See* 19 U.S.C. §§ 1500, 1502.

35.    Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS.  *See* 19 U.S.C. § 1292; Pub. L. No. 100-418, 102 Stat. 1107 (1988).  Under the HTSUS framework, CBP classifies goods entering the United States using an organized structure of chapters, headings, and subheadings, each identifying goods and corresponding duty rates.  The HTSUS headings cover broad categories of merchandise, while the subheadings provide more specific classifications.

36.    CBP regulations govern how merchandise must be classified and appraised under the HTSUS.  *See* 19 C.F.R. § 152.11.

37.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS in accordance with presidential directives. *See* 19 U.S.C. §§ 1202, 3005, 3006.

38.     When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502. To facilitate the collection of tariffs, CBP uses its Cargo Systems Messaging Service ("CSMS") to inform importers of changes to the amount and administration of import duties. The guidance incorporates and imposes the current duties imposed under the Challenged IEEPA Tariff Orders.[16]

39.     In implementing the challenged tariff orders, CBP required that goods subject to the IEEPA duties be classified under newly created tariff codes – codes that exist solely because of the Executive Orders that this Court and the Federal Circuit have declared unlawful, or similar orders relying on the same underlying authority.

**D.    Liquidation**

40.     CBP's regulations define "liquidation" as "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

---

[16] *See, e.g.*, CBP, CSMS # 64297449, *Guidance: Additional Duties on Imports from Canada* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d519e9; U.S. Customs & Border Prot., CSMS # 64297292, *Guidance: Additional Duties on Imports from Mexico* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d5194c; U.S. Customs & Border Prot., CSMS # 64299816, *Update – Additional Duties on Imports from China and Hong Kong* (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, *Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates* (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6.

41.    When goods enter the United States, the importer of record pays estimated duties based on the declared value of the goods, the country of origin, and HTSUS classification.  *See* 19 U.S.C. § 1484.  CBP reviews the entry declaration and examines the merchandise.

42.    After review, CBP finalizes the classification, value, duty rate, and total duties owed.  *See* 19 U.S.C. § 1500.  CBP then "liquidates" the entry by notifying the importer of the final calculation.  *See* 19 U.S.C. § 1504.  Upon liquidation, CBP will notify the importer if additional duties are owed or if the importer is entitled to a refund of a portion of the estimated duties paid.

43.    Unless extended, liquidation must occur within one year from the date of entry. *See* 19 U.S.C. § 1504(a).  As a matter of practice, CBP typically liquidates duties within 314 days after entry and posts public notices of liquidation.

44.    CBP may extend the liquidation deadline for up to one additional year upon an importer's request and a showing of good cause.  *See* 19 U.S.C. § 1504(b)(2); *see* 19 C.F.R. § 159.12(a)(1)(ii).  However, upon information and belief, CBP is refusing to extend liquidation for the sole reason of the pendency of the Supreme Court decision, and has indeed accelerated liquidations of entries on which IEEPA duties were paid.

45.    This Court has equitable power to suspend liquidation where necessary. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

46.    After liquidation occurs, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the entry. 19 U.S.C. § 1514.  An importer may protest "any clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or reliquidation, and, decisions of the Customs Service".  *Id.*  However, where CBP acts in a ministerial capacity, *i.e.*, without discretion, such

as by applying a duty rate without discretion, the liquidation generally cannot be protested.  *See Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *see also Thomson Consumer Elecs., Inc. v. United States*, 247 F.3d 1210, 1215 (Fed. Cir. 2001) ("Customs is powerless to perform any active role in the determination of the constitutionality of the assessment.").

47.    In a separate, parallel action, *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, this Court recognized that plaintiffs "'are not required to file a protest' in cases involving constitutional challenges to duties" and concluded that "this court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i)."  Slip. Op. 25-154 at 7-8 (internal citations omitted).

48.    Moreover, in *AGS*, the Government has taken the position that it will not oppose the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful.  *Id.* at 3-4.  The Government has taken the same position in other cases involving IEEPA tariffs, *id.* at n.1, and judicial estoppel would prevent it from taking an inconsistent approach after a final result in *V.O.S.*  *Id.* at 5 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

**II.    IEEPA Does Not Authorize the Imposition of Tariffs.**

49.    The Challenged IEEPA Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as sources of authority.  None of these statutes gives the President the power to impose tariffs.  Indeed, the Federal Circuit has now expressly held that IEEPA does not

authorize the duties imposed through the Reciprocal Tariff Orders and the Trafficking Tariff Orders.

50.     IEEPA grants the President certain emergency powers, but these powers may be used only to deal with an "unusual and extraordinary threat" for which a national emergency has been declared, and only for purposes specified in the statute.  *See* 50 U.S.C. § 1701(b).  Those powers include the ability to "investigate, regulate, prohibit . . . importation or exportation of . . . any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1702(a)(1)(A)-(B).  IEEPA's text never uses the words "tariff," "duty," or any equivalent terms.  Nor does it authorize the President to impose duties, raise duty rates, create country-specific schedules, or modify the HTSUS.

51.     IEEPA was enacted in 1977.  Both the House and Senate committee reports expressed the view that past Presidents had abused the authority to regulate economic transactions in a national emergency under a different statute – the Trading With the Enemy Act ("TWEA") – by using it in circumstances far removed from those that originally gave rise to the declaration of a national emergency.  *See* CHRISTOPER CASEY ET AL., CONG. RSCH. SERV., R45618, THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT: ORIGINS, EVOLUTION, AND USE, at 7, n.51 (2024); H.R. Rep. No. 95-459, at 7–9 (1977); S. Rep. No. 95-466, at 2 (1977).

52.     Although IEEPA has been amended several times, Congress has never amended it to authorize the imposition of tariffs or duties.  This is true notwithstanding that Congress has enacted numerous other tariff statutes where it expressly granted that power to the President under various conditions.

**III.     The Power to Impose Tariffs is Vested in Congress, not the President.**

53.     The U.S. Constitution places tariff authority squarely with Congress.  Article I

provides that "{a}ll legislative powers herein granted shall be vested in a Congress of the United

States," and further specifies that Congress shall have the power to "lay and collect Taxes,

Duties, Imposts, and Excises," and to "regulate Commerce with foreign Nations." U.S. CONST.

art. I, §§ 1, 8.

54.     As has been long understood, tariffs fall within the Taxing and Commerce clauses

with the authority to impose them therefore vested in Congress alone.  To the extent that

Congress may delegate elements of this authority, it must provide clear and intelligible guidance.

*See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656 (2025).

55.     IEEPA contains no such intelligible principle permitting the President to impose

tariffs.  The statute is structured to provide authority to regulate or control property and financial

transactions, not to authorize duties that can rise to 145 percent or apply to the vast majority of

imports without any connection to the underlying national emergency.

56.     Reading IEEPA to authorize such unbounded tariffs would also raise serious

nondelegation concerns and would require striking down the statute as unconstitutional under the

nondelegation doctrine for lacking clear and intelligible guidance to the President.

57.     The Supreme Court has repeatedly emphasized that Congress must speak clearly

before it is proper to find it intended to confer power of vast economic and political significance

on the executive branch. *See West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (quoting *Utility Air

Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)); *Biden v. Nebraska*, 600 U.S. 477, 505-06

(2023).

**IV.    Courts Have Held that IEEPA Does Not Authorize the Challenged IEEPA Tariff
         Orders.**

58.     This Court granted summary judgment to plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties. The Federal Circuit, sitting *en banc*, affirmed the decision on August 29, 2025, holding that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

59.     In a parallel case filed by different importers, the U.S. District Court for the District of Columbia likewise held that IEEPA does not authorize *any* tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That case was on appeal when the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated and fully briefed before the Supreme Court. Oral argument at the Supreme Court took place on November 5, 2025.

60.     Certain orders imposing IEEPA tariffs, such as the secondary tariffs on imports from India, were promulgated after the *V.O.S. Selections* and *Learning Resources* cases were filed. These orders suffer from many of the same basic statutory and constitutional infirmities.

**V.     The Valmet Entities Have Paid IEEPA Duties Imposed Pursuant to the Challenged IEEPA Tariff Orders.**

61.     As of the date of this Complaint, the Valmet Entities have paid IEEPA duties imposed under the Challenged IEEPA Tariff Orders, including the Trafficking Tariff Orders and Reciprocal Tariff Orders, on their imports from Finland, Germany, China, India, and many other countries. The Trafficking Tariff Orders and Reciprocal Tariff Orders are the very same Executive Orders that were found unlawful by this Court and the Federal Circuit.

62.     Plaintiffs' imports subject to IEEPA duties entered the United States under newly created HTSUS codes that exist only because of the unlawful tariff regime.

17

63.     Plaintiffs have paid IEEPA duties and continue to pay IEEPA duties on their imports of pulp and paper equipment and machinery and other equipment and components from a variety of countries subject to the Challenged IEEPA Tariff Orders.

64.     The past import entries for which Plaintiff paid IEEPA duties have already begun to liquidate, with liquidations accelerating through February 2026.[17]

65.     Based on Plaintiffs' knowledge and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA tariffs.  Without judicial relief, these entries will continue to liquidate, potentially complicating or delaying Plaintiffs' ability to obtain refunds even if the Supreme Court affirms the Federal Circuit's ruling.

## STATEMENT OF CLAIMS

### COUNT I:     THE CHALLENGED TARIFF ORDERS ARE ULTRA VIRES

66.     Plaintiffs incorporate by reference paragraphs 1-65 above.

67.     This Court has already held in *V.O.S. Selections* that the President exceeded the authority conferred by IEEPA when he imposed the Reciprocal Tariff Orders and the Trafficking Tariff Orders.  As this Court explained in *V.O.S. Selections*, IEEPA authorizes the President to "investigate, regulate, or prohibit" certain categories of transactions involving foreign countries during a national emergency, but it does not authorize the imposition of tariffs or duties on imported goods.  Nor does it transfer tariff-imposing power from Congress to the President. Moreover, even if IEEPA did authorize tariffs in certain circumstances, "unbounded" Challenged IEEPA Tariff Orders are not sufficiently tied to the underlying national emergencies declared by the President to justify this use of the law.  The Federal Circuit affirmed this Court's holding,

---

[17] Plaintiffs reserve the right to seek refunds of any and all IEEPA duties paid regardless of liquidation date.

finding that Congress has not delegated to the President the authority to impose duties such as those challenged here.  The same is true of Executive Order 14329, which imposes sweeping tariffs on imports from India of the exact same goods as the other challenged tariff orders based on an unrelated national emergency (*i.e.*, Russian aggression against Ukraine).

68.    With one exception (Executive Order 14329), the tariffs challenged in this Complaint are the same as those struck down in *V.O.S. Selections*.  All of the Challenged IEEPA Tariff Orders rely exclusively on IEEPA as the basis for imposing duties and revising the HTSUS.

69.    For the same reasons articulated by the Federal Circuit, the challenged tariffs in this case exceed the President's statutory authority and are therefore unlawful and void as to Plaintiffs.

70.    Plaintiffs respectfully request that this Court in this action declare that the challenged tariffs are unlawful as to Plaintiffs, and enjoin CBP from collecting IEEPA duties from the Valmet Entities. The Court should further order CBP to refund all IEEPA duties collected from Plaintiffs since their imposition, plus interest, as provided by law.

71.    To the extent that Plaintiffs' entries liquidate during the pendency of this action, the Court should exercise its authority under 28 U.S.C. § 1581(i) to order reliquidation of all such entries so that Plaintiffs may receive refunds of all IEEPA duties paid.

## *COUNT II*:    ALTERNATIVELY, THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL

72.    Plaintiffs incorporate by reference paragraphs 1-71 above.

73.    To the extent that this Court were to conclude that IEEPA could be interpreted as authorizing tariffs – a construction Plaintiffs dispute – the challenged Trafficking Tariff Orders

and Reciprocal Tariff Orders would nevertheless be invalid, because such a reading of IEEPA would constitute an unconstitutional delegation of legislative authority.

74.    The Constitution vests in Congress exclusively the power to "lay and collect … Duties."  U.S. CONST. art. I, § 8, cl. 1.

75.    Under well-established separation-of-powers principles and Supreme Court precedent, Congress may not delegate this authority to the President unless it provides clear and intelligible guidance that limits and guides the exercise of the executive discretion.

76.    IEEPA contains no such intelligible principle with respect to tariffs.  Nothing in IEEPA provides any standard, limit, or guidance under which the President may impose duties, revise duty rates, or modify tariff schedules.  As a result, interpreting IEEPA to authorize the challenged tariffs would amount to an impermissible transfer of legislative power to the executive branch.  And even if IEEPA did authorize tariffs under certain circumstances, the Reciprocal Tariff Orders and Trafficking Tariff Orders are not sufficiently linked to the national emergencies on which they are purportedly based to be valid.

77.    Plaintiffs therefore seek a declaration that the Challenged IEEPA Tariff Orders are unconstitutional as applied to Plaintiffs, an injunction prohibiting CBP from enforcing the tariffs as to Plaintiffs, and an order directing CBP to refund all IEEPA duties paid by Plaintiffs, plus interest, as provided by law.

**COUNT III:  DECLARATORY RELIEF**

78.    Plaintiffs incorporate by reference paragraphs 1-77 above.

79.    Under 28 U.S.C. § 2201(a), federal courts may declare the rights and legal relations of parties where an actual controversy exists.

80.     An actual controversy exists here concerning the President's asserted authority to impose tariffs under IEEPA, the constitutionality of IEEPA, and CBP's authority to implement and collect the resulting duties.

81.     Plaintiffs have suffered injury by having been required to pay IEEPA duties as a result of the Challenged IEEPA Tariff Orders, including the Trafficking Tariff Orders, Reciprocal Tariff Orders, and Executive Order 14329 on merchandise Plaintiffs have imported into the United States.

82.     This Court may exercise its equitable authority to issue a declaratory judgment that the Challenged IEEPA Tariff Orders are unlawful for any of the reasons set forth above, and that CBP lacks authority to implement or collect the resulting duties as to Plaintiffs.

## <u>REQUEST FOR RELIEF</u>

Plaintiffs respectfully request that this Court:

a)  Declare that the President lacks the authority under IEEPA to set tariff rates or impose new tariffs;

b)  Declare that the Challenged IEEPA Tariff Orders are unlawful;

c)  Declare that, with respect to Plaintiffs, CBP lacks the authority to implement and collect any tariffs set out in the HTSUS that are based on the challenged tariff orders;

d)  Enjoin CBP from imposing and enforcing any tariffs on Plaintiffs' entries as set out in the HTSUS that are based on the challenged tariff orders;

e)  Order CBP to reliquidate any of Plaintiffs' liquidated entries for which Plaintiffs paid IEEPA duties;

f)  Order the United States to refund to Plaintiffs the IEEPA duties collected on those entries, with interest, as provided by law; and

g)  Grant such further relief as this Court deems proper.

Respectfully submitted,

/s/ *Nancy Fischer*

Nancy A. Fischer
Sahar Hafeez
Julian M. Beach

**Pillsbury Winthrop Shaw Pittman LLP**
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
202-663-8965

*Counsel for Plaintiffs*

Dated: <u>February 18, 2026</u>